# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, and THE STATE OF WISCONSIN, <br><br> Plaintiffs, <br><br> and <br><br> ROSE PRESSER, <br><br> Relator, <br><br> v. <br><br> ACACIA MENTAL HEALTH CLINIC, LLC, and ABE FREUND, <br><br> Defendants. | Case No. 13-CV-71-JPS <br><br><br> ORDER |

1. BACKGROUND

    1.1 Overview

    Rose Presser ("Presser"), the relator in this lawsuit filed under the *qui tam* provisions of the federal False Claims Act ("FCA"), 31 U.S.C. § 3730(b), and its Wisconsin analog ("Wisconsin FCA"), Wis. Stat. § 20.931(5), brings claims on behalf of the United States and the State of Wisconsin against defendants Acacia Mental Health Clinic, LLC ("Acacia") and Abe Freund ("Freund") (who, allegedly, is Acacia's "principal owner"), alleging a variety of fraudulent conduct in connection with Acacia's billings for services rendered. (Docket #31).[1]

    1.2 Procedural Posture

        1.2.1 Presser's Original Complaint

    Rather than answer Presser's original complaint (Docket #1), Defendants filed a motion to dismiss. (Docket #19). In response to

---

[1] The United States elected not to intervene in this lawsuit. (Docket #14); 31 U.S.C. § 3730(b)(4)(B). Likewise, the State of Wisconsin elected not to intervene in this case. (Docket #13); Wis. Stat. § 20.931(5)(d)(2).

Defendants' motion to dismiss, Presser requested leave to amend her original complaint to cure any deficiencies the Court might identify in adjudicating Defendants' motion. (Docket #22).

The Court reviewed Presser's original complaint (Docket #1) and observed that "[t]he lynchpin to federal jurisdiction in this case appears to be a single claim under '31 U.S.C. § 3729(a)(2)' of the FCA," however, "that statutory subsection does not provide for liability. *See* 31 U.S.C. § 3729(a)(2)." (Docket #30 at 1).[2] Therefore, the Court concluded that, "[i]n the absence of an amended complaint, th[e] Court would be obliged to dismiss this case for failure to state a claim (and, as a consequence, lack of subject matter jurisdiction over the relator's state law claims)." (*Id.*). Accordingly, the Court ordered Presser to "file an amended complaint (superceding in all respects her initial complaint) making any and all improvements she deems appropriate; *no further leave to amend will be granted.*" (*Id.* at 2) (emphasis in original).

### 1.2.2 Presser's Amended Complaint

Before the Court is Defendants' motion to dismiss Presser's amended complaint (Docket #31) for failure to state with particularity the circumstances constituting fraud, Federal Rule of Civil Procedure 9(b), and failure to state a claim, Fed. R. Civ. P. 12(b)(6). (Docket #32).

## 2. PRESSER'S ALLEGATIONS AND CLAIMS

Below the Court will recount Presser's central allegations as well as her eight claims for relief.

---

[2] Page references refer to ECF pagination unless the context requires otherwise.

Presser's background in health care includes twenty years of experience as a Nurse or Nurse Practitioner in Wisconsin hospitals and clinics. (Docket #31 at ¶ 11). In October of 2011, Presser joined Acacia—"a Wisconsin limited liability company engaged in the business of providing certified outpatient mental health and addiction treatment for individuals who have mental health problems, behavior problems and AODA (Alcohol and Other Drug Abuse) issues, including children, adolescents, adults and families"—as an "independent contractor Nurse Practitioner" serving the patient population at Acacia's principal place of business: 6040 West Lisbon Avenue, Suite #102, in Milwaukee, Wisconsin. (*Id.* at ¶¶ 9 and 12). In this capacity, Presser provided services "including psychiatric evaluations and medication management." (*Id.* at ¶ 12).

From the outset of her professional services engagement at Acacia, Presser observed that Freund, as "principal owner" of Acacia, mandated certain protocols that "were contrary to [Presser's] training and years of experience as a clinician." (*Id.* at ¶¶ 10 and 13). In particular, Freund established (and David Dropkin, the clinic manager, enforced) the following protocols (collectively, the "Disputed Protocols"):

- Prospective patients were assessed by four individuals (each on a different day)—a receptionist, a Medical Nurse Practitioner, a psychotherapist, and finally Presser or another of Acacia's Nurse Practitioners—using "criteria established by Freund and Acacia management" "before medications were provided." Each such assessment "was billed under [the American Medical Association's Current Procedural Terminology] billing code 90801, even though the services

>   being provided did not meet the definition of the billing code."
>   (Docket #31 at ¶¶ 15-26).

- Each patient was subjected to a mandatory urine drug screen at each visit. Each such urine drug screen "was billed." (*Id.* at ¶¶ 27-29).

- In order to speak with a clinician or have a prescription refilled, patients were required to visit Acacia's clinic in-person. (*Id.* at ¶¶ 30-35). Patients "who missed appointments or were not seen for a period as short as thirty days" were discharged from Acacia's care. (*Id.* at ¶ 36). Discharged patients were required to undergo patient in-take anew (*e.g.*, assessments by four individuals) or "[a]t the very least, patients were required to see the clinic's psychotherapist before obtaining a new prescription, generating a billing." (*Id.* at ¶¶ 36-37).

Citing her "years of experience and training," Presser claims that the Disputed Protocols were "not medically necessary." (Docket #31 at ¶¶ 26, 29 and 39). Moreover, Presser claims that when she "or other clinicians questioned the medical necessity of [the Disputed Protocols], either during staff meetings or in personal conversations, they repeatedly were told, 'This is how Abe [Freund] wants it.'" (*Id.* at ¶ 14).

For his part, Freund "closely monitored the treatment provided by Presser" and "would drop in, either via email or in person, and direct Presser to follow policy." (*Id.* at ¶ 50). After initially telling Presser that Acacia could take "all insurance," Freund "changed his position and told Presser that Acacia was 'not set up' to take private pay insurance but was 'working on it.'" (*Id.* at ¶¶ 55-56). At some (unidentified) point(s) in time, Freund told

Presser that: (i) "almost all of Acacia's patients were 'on Title 19.'" (*Id.* at ¶ 57); and (ii) "Acacia had difficulty with Medicare with respect to getting approval of services and/or meeting Medicare guidelines and criteria." (*Id.* at ¶ 58).

With regard to *who* was billed for Acacia's services rendered, the most detailed paragraph in Presser's amended complaint on this topic states as follows:

> Based on her discussions with Freund, Presser knew that Acacia billed for the services provided to clinic patients. Based on those discussions, *as well as her experience at other clinics*, she knew that Acacia submitted bills to individual patients, to private insurers, and to Medicare and Medicaid programs run by the United States and the State of Wisconsin for services provided to patients, *subject to their individual circumstances*. She also knew those bills were based on services provided to patients, as coded by Acacia staff, in accordance with Acacia's mandatory policies and procedures discussed above.

(Docket #31 at ¶¶ 59 and 60) (emphases added).

Against the backdrop of these principal allegations, Presser claims that Defendants have violated the FCA and the Wisconsin FCA "since at least October 2011" by:

- Knowingly presenting false claims for payment to the United States, 31 U.S.C. §3729(a)(1)(A), and the State of Wisconsin, Wis. Stat. § 20.931(2)(a) (together, "Fraudulent Presentment Counts"). (Docket #31 at ¶¶ 70-73 and 80-83).

- Knowingly making "false records or statements" to the United States, 31 U.S.C. § 3729(a)(1)(B), and the State of Wisconsin, Wis. Stat. § 20.931(2)(b), material to false claims to these sovereigns (together, "Fraudulent Statement Counts"). (Docket #31 at ¶¶ 74-76 and 84-86).

- Agreeing and conspiring—as between "Freund and Acacia, acting through its various members and/or employees"—to defraud the United States "by presenting false claims for payment and making false records and statements material to those claims for services" all for the purpose of obtaining payments from the United States, 31 U.S.C. §3729(a)(1)(C), and the State of Wisconsin, Wis. Stat. § 20.931(2)(c) (together, "Conspiracy Counts"). (Docket #31 at ¶¶ 77-79 and 87-89).

In addition, Presser brings two common law claims (purportedly on behalf of the United States and the State of Wisconsin) for: (i) payments under mistake of fact (Docket #31 at ¶¶ 90-93); and (ii) unjust enrichment (*Id.* at ¶¶ 94-100).

3. ANALYSIS

As noted above in Section 1.2.2, Defendants move to dismiss Presser's amended complaint for failure to state with particularity the circumstances constituting fraud, Federal Rule of Civil Procedure 9(b), and failure to state a claim, Fed. R. Civ. P. 12(b)(6). (Docket #32).

To survive Defendants' Rule 9(b) motion, Presser's amended complaint must "show, in detail, the nature of the charge, so that vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy." *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854-855 (7th Cir. 2009). By requiring details of the "who, what, where, and when of the alleged fraud," Rule 9(b) "requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

To survive Defendants' Rule 12(b)(6) motion, Presser's amended complaint must state a plausible claim for relief that permits "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

### 3.1 Fraudulent Presentment Counts

To state a claim under 31 U.S.C. §3729(a)(1)(A) or Wis. Stat. § 20.931(2)(a), Presser must allege that Defendant(s) knowingly presented a false claim for payment or approval *to the government.*

Defendants move to dismiss Presser's Fraudulent Presentment Counts under Rule 9(b) for, *inter alia*, failing to identify with specificity *to whom* bills for Acacia's services were allegedly presented. (Docket #33 at 12-13). Indeed, as noted above in Section Two, the most detailed paragraph in Presser's amended complaint concerning *who* was billed for Acacia's services states as follows:

> Based on her discussions with Freund, Presser knew that Acacia billed for the services provided to clinic patients. Based on those discussions, as well as her experience at other clinics, she knew that Acacia submitted bills to individual patients, to private insurers, and to Medicare and Medicaid programs run by the United States and the State of Wisconsin for services provided to patients, *subject to their individual circumstances.* She also knew those bills were based on services provided to patients, as coded by Acacia staff, in accordance with Acacia's mandatory policies and procedures discussed above.

(Docket #31 at ¶¶ 59 and 60) (emphasis added).

A careful parsing of the sentence containing italicized text above reveals that Presser does not even definitively *allege* that at least one patient's

bill was submitted to the United States or the State of Wisconsin. *See Id.* With the benefit of the foregoing analysis, the Court finds that Presser's vague equivocation with regard to *who* was actually billed for Acacia's services fails to satisfy the heightened pleading requirement set forth in Rule 9(b). *See generally, Lusby*, 570 F.3d at 854-855. Therefore, Presser's Fraudulent Presentment Counts will be dismissed under Rule 9(b).

### 3.2 Fraudulent Statement Counts

To state a claim under 31 U.S.C. § 3729(a)(1)(B) or Wis. Stat. § 20.931(2)(b), Presser must allege, *inter alia*, that Defendant(s) knowingly made "a false record or statement" in order to receive money from the government. *See generally, U.S. ex rel. Yannacopoulos v. General Dynamics,* 652 F.3d 818, 822 (7th Cir. 2011).

With regard to the Fraudulent Statement Counts, Defendants contend that Presser's amended complaint "does not set forth what, if anything, constitutes a false record or statement" made in order to receive money from the government. (Docket #33 at 15). In response, Presser clarifies that the alleged billings themselves (referenced *supra* in Section 3.1) amount to false records or statements. (Docket #37 at 25-26).

But even if the alleged billings themselves were false records or statements, the question remains: *who* was allegedly billed? If not the government, then the Fraudulent Statement Counts must be dismissed. As noted *supra* in Section 3.1: Presser's vague equivocation with regard to *who* was actually billed for Acacia's services fails to satisfy the heightened pleading requirement set forth in Rule 9(b). *See generally, Lusby*, 570 F.3d at 854-855. Therefore, Presser's Fraudulent Statement Counts will be dismissed under Rule 9(b) as well.

### 3.3 Conspiracy Counts

Defendants argue that Presser's allegations of a conspiracy are simply too sketchy to survive Rule 9(b). (Docket #33 at 16-17). In particular, Defendants contend that Presser failed to identify specifically, *inter alia*, *who* allegedly conspired. (*Id.* at 17).

In her amended complaint, Presser alleges that "Freund and Acacia, acting through its various members and/or employees," conspired to defraud the government. (Docket #31 at ¶¶ 77-79 and 87-89). Given that Presser fails to allege with specificity *who* among Acacia's "various members and/or employees" allegedly conspired with Freund, the Court finds that Presser's allegations of a conspiracy do not satisfy Rule 9(b).

Perhaps mindful of her fundamental pleading error, Presser's response brief points to other paragraphs of her amended complaint where she alleges that Freund (as owner) and Dropkin (as clinic manager) "together announced" certain Disputed Protocols. (Docket #38 at 23). To be sure, that meager assertion does nothing to resuscitate her Conspiracy Counts.

### 3.4 Common Law Claims

Although "a private individual has standing to bring suit in federal court on behalf of the United States *under the False Claims Act*," the same cannot be said of claims *under common law* because the FCA's *qui tam* provision "statutorily designate[s]" private individuals as the United States' agent to bring a civil action *only for* violations of Section 3729 of the FCA. *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 772 and 787 (2000) (emphasis added); 31 U.S.C. § 3730(b)(1). Because Presser's causes of action for unjust enrichment and payment under mistake of fact derive from the common law, rather than Section 3729 of the FCA, Presser ostensibly lacks standing to prosecute her common law claims. As the party

invoking federal jurisdiction, Presser bears the burden of establishing standing for each of her claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Here, Presser's amended complaint offers no basis for standing to bring claims under common law in the name of the United States or the State of Wisconsin. *See* (Docket #31). With the benefit of the foregoing analysis, the Court will dismiss Presser's common law claims for lack of standing.

  3.5 Leave to Amend?

Under the heading "PRESSER SUFFICIENTLY STATED COMMON LAW CLAIMS," Presser's response brief states as follows: "If this Court determines that her complaint is deficient in any way, she should be granted an opportunity to amend her complaint to cure those deficiencies." (Docket #37 at 27).

However, as noted *supra* in Section 1.2.1, the Court previously identified a serious error in Presser's original complaint (Docket #1) depriving the Court of jurisdiction over her entire case and, in that connection, granted Presser leave to "file an amended complaint (superceding in all respects her initial complaint) making any and all improvements she deems appropriate; *no further leave to amend will be granted.*" (Docket #30 at 2) (emphasis in original).

On the state of the record, the Court finds that any further amendment would be unduly prejudicial to Defendants who have labored under the specter of Ms. Presser's critically-deficient allegations of fraud for over twelve months. *See* (Docket #15). Therefore, Presser's request for leave to further amend her amended complaint (Docket #31) must be denied.

Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss (Docket #32) be and the same is hereby GRANTED; and.

IT IS FURTHER ORDERED that this case be and the same is hereby DISMISSED with prejudice.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 15th day of July, 2014.

BY THE COURT:

*signature*

J.P. Stadtmueller
U.S. District Judge